IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **COLIN T.**[1], <br><br>       Plaintiff, <br><br>    v. <br><br> **MARTIN O'MALLEY**, Commissioner of Social Security, <br><br>       Defendant. | Case No. 6:24-cv-91-SI <br><br> **OPINION AND ORDER** |

H. Peter Evans, EVANS & EVANS PC, 222 NE Park Plaza Drive, Suite 113, Vancouver, WA 98684. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Kevin Danielson, Executive Assistant U.S. Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Katherine Watson, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, Social Security Administration, 6401 Security Boulevard, Baltimore, MD 21235. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Plaintiff Colin T. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying his application for Supplemental

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

Security Income ("SSI"). For the reasons discussed below, the Court affirms the decision of the Commissioner.

## STANDARD OF REVIEW

The decision of the administrative law judge ("ALJ") is the final decision of the Commissioner in this case. The district court must affirm the ALJ's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla" and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the ALJ's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the ALJ. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). A reviewing court, however, may not affirm the ALJ on a ground upon which the ALJ did not rely. *Id.*; *see also Bray*, 554 F.3d at 1225-26.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff protectively filed an application for SSI on March 16, 2018,[2] alleging disability beginning on May 11, 2012.[3] *See* AR 95, 125, 307-16. He later amended his alleged onset date to November 15, 2016. AR 319. Plaintiff's date of birth is August 12, 1976, and he was 40 years old at the time of the alleged onset of disability. AR 41. The agency denied Plaintiff's claim both initially and upon reconsideration, and Plaintiff requested a hearing. AR 148-56, 165-69, . Plaintiff appeared for a telephonic hearing before an ALJ on August 31, 2022. AR 51-67. The ALJ issued a decision denying Plaintiff's claim on September 9, 2022. AR 23-43. Plaintiff requested review of the ALJ's decision, which the Appeals Council denied. AR 1. Accordingly, the ALJ's decision is the final decision of the agency and Plaintiff seeks judicial review of that decision.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

---

[2] The application summary states that Plaintiff applied for SSI on March 20, 2018. AR 307. This appears to be a report generated after the actual application date that mistakenly reports the application date as the date the report was generated. Other agency documents in the record and the ALJ's opinion state that Plaintiff's application date was March 16, 2018. *See* AR 23, 95, 125.

[3] On March 16, 2018, Plaintiff also applied for disability insurance benefits, alleging a disability onset date of May 11, 2012. AR 303-06. He later withdrew this application by amending his alleged disability onset date to after his date last insured. *See* AR 52-53.

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are:

> (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25. Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the analysis continues beyond step three, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC").

The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Tackett*, 180 F.3d at 1099; *see Bustamante*, 262 F.3d at 954.

### C. The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR 26. At step two, the ALJ found that Plaintiff suffered from the severe impairments of degenerative disc disease of the spine, fibromyalgia, degenerative joint

disease of the shoulder, mild degenerative joint disease of the knees, chronic obstructive pulmonary disease ("COPD"), conversion disorder, and personality disorder. *Id*. At step three, the ALJ found that Plaintiff's impairments did not meet, medically equal, or functionally equal a listing. AR 26-30.

The ALJ then determined Plaintiff's RFC. The ALJ concluded that Plaintiff could perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), with the following additional limitations:

> he can never climb ladders, ropes, or scaffolds, can occasionally climb ramps and stairs, can occasionally balance (as defined in the SCO [Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles]), stoop, kneel, crouch, and crawl, can tolerate occasional exposure to extreme cold, extreme heat, humidity, wetness, vibration, and pulmonary irritants such as fumes, odors, dust, gases, and poor ventilation, can tolerate no exposure to hazards such as unprotected heights and heavy machinery, can understand, remember, and carry out simple instructions, can tolerate occasional changes in a routine work setting, can use judgment to make simple work related decisions, cannot perform work requiring a specific production rate (such as assembly line work), can tolerate frequent contact with supervisors, can have occasional contact with coworkers but no team tasks, and can have occasional contact with the general public.

AR 30.

At step four, the ALJ concluded that Plaintiff was unable to perform his past relevant work as a diesel mechanic. AR 41. At step five, the ALJ determined that considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that the Plaintiff could perform, including mail room clerk, marking clerk, and photo copy machine operator. AR 41-42. Thus, the ALJ concluded that Plaintiff was not disabled from November 15, 2016, through the date of the decision. AR 43.

## DISCUSSION

Plaintiff assigns error to the ALJ's assessment of Plaintiff's subjective symptom testimony surrounding only his physical impairments.

### A. Legal Standard

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, 2017 WL 5180304, at *2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.*, at *7-8.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

PAGE 7 – OPINION AND ORDER

### B. The ALJ's Findings

The ALJ found that Plaintiff passed the first test but failed the second. At the first step, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged pain and other symptoms. AR 31. At the second step, however, the ALJ offered the boilerplate statement that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id*. The ALJ then stated that Plaintiff's "medical record does not support the alleged severity of his symptoms." *Id.* During the ALJ's discussion of Plaintiff's medical record, the ALJ also noted some activities of daily living performed by Plaintiff as contradicting his claimed limitations. AR 31-33.

### C. Plaintiff's Testimony

At the hearing, Plaintiff testified that on a daily basis, his neck, shoulders, arms, midback, lower back, hips, and left knee all cause him pain. AR 55. Plaintiff further explained that his mid and lower back pain occurs twenty-four hours a day to the point that it interrupts his sleep. AR 56. To deal with the pain, Plaintiff stated that he uses medical marijuana products and nothing else. *Id*. Plaintiff further testified that he has difficulty standing and walking, and that "without assistance" he can walk "50 yards or less[.]" AR 56-57. Plaintiff testified that he began using a cane on his own, but that "the doctors . . . prescribed it as needed." AR 57. Plaintiff stated he can sit for forty-five minutes to one hour, then must get up and stretch. AR 59. On a typical day, Plaintiff goes to the bathroom, has breakfast, watches TV, does things in the yard with help if need be, has lunch, goes the store if necessary, has dinner, then sleeps. *Id*. Plaintiff testified the heaviest item he can lift without causing pain is one half-gallon. AR 60. Lastly, Plaintiff testified that because of his pain, it is hard to focus on tasks. *Id*.

**D. Specificity**

Plaintiff argues that the ALJ was not sufficiently specific about which testimony she was discounting for this Court to meaningfully review the ALJ's decision. Plaintiff contends that because the ALJ "regurgitat[ed] the medical record[,]" and generally "conclude[d] that the medical record does not support the alleged severity of Plaintiff's symptoms[,]" the ALJ's stated rationale for discounting Plaintiff's testimony is not clear or convincing. The Court disagrees.

A court "cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [a clamaint's] pain testimony where . . . the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (emphasis in original). "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination" but must "specify which testimony she finds not credible." *Id*. at 489. And reaching a conclusion about the plaintiff's testimony and summarizing the medical evidence, even if a district court can reasonably draw inferences regarding inconsistencies from that summary of medical evidence, does not suffice to meet the ALJ's burden. *Id*. at 494. This is because a court may only affirm based on reasons asserted by the ALJ, and the district court may not "comb the administrative record to find specific conflicts." *Id*. (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014)); *see also Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (stating that "provid[ing] a relatively detailed overview of [a claimant's] medical history . . . [']is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible'" (emphasis in original) (quoting *Brown-Hunter*, 806 F.3d at 494)).

Here, the ALJ identified the subjective symptom testimony the ALJ found unsupported by or inconsistent with the record: Plaintiff's allegation of ongoing back and shoulder pain, his

cane use and weakness with walking, decreased range of motion, radicular symptoms of tingling, jerking motions and numbness in the arm and hand, and knee pain. AR 31-37. The ALJ further identified what evidence she believed contradicted these allegations: Plaintiff's reported pain levels to medical providers, mild imaging and physical examination results, and his daily activities and habits. *Id*. For example, the ALJ found that despite Plaintiff's claims of breathing issues due to COPD, he continues to be a "daily smoker, with treatment and progress notes from throughout the period in question showing that he reported smoking half to one pack of cigarettes per day in addition to regular marijuana use ('several times per day')." AR 37. The ALJ also discussed Plaintiff's medical history, highlighting objective evidence that the ALJ considered did not support that testimony. AR 31-37. Within the medical history discussion, the ALJ noted at times the objective evidence that did not support specific aspects of Plaintiff's testimony, such as that his normal physical examinations contrasted with his claimed limitations from his back and shoulder pain and arm tingling and numbness. *Id*. The ALJ thus explained the reasoning linking the testimony to particular parts of the record with sufficient clarity to permit review.

The Ninth Circuit does not require an ALJ to "perform a line-by-line exegesis of the claimant's testimony." *Lambert*, 980 F.3d at 1277. And the Court "will not fault the agency merely for explaining its decision with 'less than ideal clarity.'" *Brown-Hunter*, 806 F.3d at 492 (quoting *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)). "Even when an agency explains its decision with less than ideal clarity, [the reviewing court] must uphold it if the agency's path may reasonably be discerned." *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (quotation marks omitted). Nor does Plaintiff offer sections of the record showing his physical health symptoms were more limiting than the ALJ described them. The Court can reasonably discern the ALJ's path regarding which testimony she found unsupported

PAGE 10 – OPINION AND ORDER

by what medical evidence. The ALJ's discussion of Plaintiff's testimony and the medical evidence was sufficient to "allow[] for meaningful review," *Brown-Hunter*, 806 F.3d at 492.

### E. Daily Activities

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina*, 674 F.3d at 1112-13; *Orn*, 495 F.3d at 639. "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See Molina*, 674 F.3d at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("One does not need to be utterly incapacitated in order to be disabled." (quotation marks omitted)). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan*, 260 F.3d at 1050; *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

PAGE 11 – OPINION AND ORDER

Regarding Plaintiff's daily activities, the ALJ stated:

> In a pair of Function Reports from June of 2018, the claimant indicated that he has difficulty with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, seeing, memory, completing tasks, concentration, using his hands, and getting along with others. However, the claimant also stated that he can manage his personal care (bathing, grooming, dressing, feeding himself, and using the toilet) with very minimal problems and is able to work in his greenhouse (water plants and grow cannabis), go to the store "when needed" and "2-4 times a week" for one to three hours, watch his children and play games with them, prepare cereal, go outside "all the time," sometimes go outside alone, drive a car, ride in a car with others, pay bills, count change, watch movies, and spend time with others four to five days per week ("hang out & talk[")].

AR 31 (citations omitted). The ALJ also noted that Plaintiff's medical record from December 2020 showed that he had performed work around the house, including carrying a bucket with "a couple pounds of rocks." AR 32-33.

These activities of daily living cited by the ALJ are inconsistent with Plaintiff's testimony that he is in constant twenty-four-hour back pain and that he has problems lifting, squatting, bending, walking, climbing stairs, reaching, sitting, talking, hearing, and seeing. *See* AR 31, 56, 397. In Plaintiff's function report, he claimed he is unable to do *any* household chores, whether they be indoors or outdoors, because he is "in need of help from children [and] neighbors [and] wife for those things to be done." AR 393. The ALJ found that Plaintiff's reported activity to his medical provider of performing work around the house and lifting heavy buckets, combined with his other reports that he works in his greenhouse and goes outside "all the time," undermined his statements that he "has difficulty with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, [and] seeing[.]" AR 31, citing AR 397.

Plaintiff argues that the ALJ "cherry-picked" findings that support her conclusion while ignoring others regarding Plaintiff's activities. Plaintiff misunderstands the ALJ's reasoning. The ALJ did not reject Plaintiff's testimony regarding his impairments "based on reports that he was still driving and performed work around the house[,]" as Plaintiff asserts. Instead, the ALJ found that Plaintiff's activities directly undercut his claims that he has difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, and seeing. In turn, the ALJ reasonably found that Plaintiff's statements about the "intensity, persistence, and limiting effects" of his physical symptoms were not as severe as alleged, given his physical examinations, reports to providers of being pain-free, and his ability to partake in activities during the relevant period. *See* AR 31-37. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). The ALJ's assessment of Plaintiff's record is a rational one, even if Plaintiff may offer another rational interpretation of the evidence. Thus, in rejecting Plaintiff's testimony, the ALJ did not err in relying on Plaintiff's activities.

**F. Objective Medical Evidence**

The ALJ also discounted Plaintiff's symptom testimony in part because the "medical record does not support the alleged severity of his symptoms." AR 31; *see also* AR 32-37 (stating that "[w]ith regard to [Plaintiff]'s degenerative disc disease of the spine, [shoulder and knees, fibromyalgia, and COPD,] review of the record shows that th[ese] disorder[s] do[] not cause limitations in excess of those found in the [RFC.]"). An ALJ may consider the lack of corroborating objective medical evidence as a "relevant factor in determining the severity of the claimant's" alleged symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, "discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th

PAGE 13 – OPINION AND ORDER

Cir. 2010) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Robbins*, 466 F.3d at 883; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2), (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

The ALJ described many medical records that do not support Plaintiff's alleged limitations. AR 32-37. For example, the ALJ cited objective medical testing from September 2018 showing that despite Plaintiff's allegations of ongoing back and shoulder pain, he "drove himself to the appointment, presented as very pleasant and in no acute distress, with negative straight leg raises, no upper extremity impingement, intact 5/5 motor strength at the rotator cuff, normal shoulder range of motion, normal grasp, pinch, manipulation, and fine coordination" and had "no muscle weakness or atrophy, negative Tinel's and Phalen sign, normal thenar and hypothenar muscles, intact cranial nerves, normal motor and sensory function, negative Romberg test, no weakness of any extremity, and normal range of motion through the thoracic spine with no muscle spasm, swelling, or deformity." AR 32, citing AR 601-04. The ALJ also acknowledged that during examination Plaintiff exhibited "some slight restriction in his cervical and lumbar range of motion as well as mild tenderness of the lumbar spine." *Id*. Furthermore, the ALJ observed that Plaintiff "use[s] . . . a cane because 'at times he does not think that he has strength in his legs,' [but] the doctor specifically indicated that 'he is carrying a cane but the use of the cane is not obligatory.'" *Id*., citing AR 603. The ALJ also discussed Plaintiff's February 2020 MRI of his cervical spine and found that it showed "left cervical adenopathy as well as mild cervical degenerative changes most pronounced at C6-7, but the changes are otherwise classified as largely minimal to mild and there is no evidence of acute

PAGE 14 – OPINION AND ORDER

post-traumatic abnormalities." *Id*., citing AR 872-73; *see also* AR 33 (discussing several treatment notes indicating Plaintiff's generally mild cervical spine examination findings).

Regarding Plaintiff's shoulder limitations, the ALJ cited OHSU Sport Medicine examination notes endorsing Plaintiff's complaints that after he did "light work around the yard[,]" his pain increased and his range of motion decreased. AR 34, citing AR 901. However, the physician's assistant observed that "despite some restriction in his right shoulder range of motion" Plaintiff

> was alert and fully oriented, with normal posture, intact 5/5 strength bilaterally through the shoulders, no shoulder instability bilaterally, no shoulder atrophy or abnormal mechanics bilaterally, no shoulder load shift issues bilaterally, and no cervical spine tenderness or focal neurological deficits, though movement of the neck did cause some shoulder pain.

*Id*., citing AR 902-04. The provider concluded that Plaintiff's "symptomology, particularly when considered with [his] recent imaging showing only early osteoarthritis signs, was more indicative of cervical spine issues rather than a significant shoulder problem" and the provider then referred Plaintiff to physical therapy. *Id*., citing AR 904. Ultimately the ALJ concluded that that the RFC takes Plaintiff's cervical spine and shoulder limitations into consideration "with the exertional and postural limitations as well as the restrictions related to avoiding vibration and hazards." AR 33.

With regard to Plaintiff's knee limitations, the ALJ cited an independent medical consultant's examination report where Plaintiff "refused to attempt toe and heel walking and refused to attempt to squat, [but] he got on and off the exam table without difficulty and exhibited normal gait with no limping, [and] had 5/5 strength in the lower extremities with only minimal restriction in knee range of motion." AR 35, citing AR 601-03. The provider also indicated that though Plaintiff reported knee pain and used a cane, the use is "not obligatory."

PAGE 15 – OPINION AND ORDER

AR 603. The ALJ also pointed to a knee x-ray taken in 2018 showing "evidence of only 'minimal' bilateral knee osteoarthritic changes, with relatively well-maintained knee joint spaces and no evidence of significant knee joint effusion." AR 35, citing AR 693. The ALJ observed that Plaintiff "alleged issues related to knee pain on a handful of occasions, but [the record] also indicate[s] that his mobility problems were also related to other respiratory, musculoskeletal, and pain disorders." *Id.*, citing AR 601-04, 608-09. The ALJ concluded that the RFC takes Plaintiff's knee limitations into consideration "with the exertional and postural limitations as well as the restrictions related to avoiding vibration and hazards." AR 36.

Lastly, with regard to Plaintiff's allegations of fibromyalgia, the Ninth Circuit has recognized fibromyalgia symptoms include "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue . . . . [T]hose suffering from it have muscle strength, sensory functions, and reflexes [that] are normal." *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) (cleaned up). The record, however, fails to support the symptoms of supporting pain, tender points, and fatigue at various points. This is not consistent with fibromyalgia symptom reporting. *See id*. at 663 (noting fibromyalgia symptoms "wax and wane"). The ALJ found that aside from Plaintiff's September 2018 consultative examination, "[t]here are no other examples of formal fibromyalgia testing in the file and no other references to positive tender or trigger points." AR 36. The ALJ discussed that the consultative examination revealed that "testing did not show any specific tender areas save some tenderness around the left posterior scapular and left elbow [therefore] no definitive diagnosis of fibromyalgia can be made." *Id*., citing AR 601-02, 605. Considering the record is devoid of any detail regarding Plaintiff's Fibromyalgia or treatment thereof, the ALJ reasoned:

PAGE 16 – OPINION AND ORDER

> While records from throughout the period in question, to include the extensive treatment and examination discussed above, do include regular pain complaints, these pains are consistently linked to the claimant's musculoskeletal disorders of the spine, shoulder, and knees and even then, the claimant is found to be in no acute distress and able to move and function in a manner consistent with the residual functional capacity above, with only mild or minimal tenderness.

*Id.*, citing AR 601-04, 608-09, 882-83, 885-88, 891-92, 894-95, 901-04, 912-13, 932-34, 940, 953.

In general, Plaintiff presents an alternative interpretation of the medical evidence regarding all of his physical limitations and asks the Court to accept his proposed interpretation instead of the ALJ's evaluation of the evidence. But the Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*. Because the ALJ's findings are supported by substantial evidence and free of legal error, the Court cannot disturb those findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214-15 (9th Cir. 2005). Accordingly, the ALJ did not err in concluding that the objective medical evidence does not support Plaintiff's claimed limitations and relying on this as a relevant factor in discounting Plaintiff's subjective testimony.

## CONCLUSION

The Court AFFIRMS the Commissioner's decision that Plaintiff was not disabled.

**IT IS SO ORDERED**.

DATED this 14th day of November, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge